CAMPBELL & WILLIAMS
DONALD J. CAMPBELL, ESQ. (1216)
djc@cwlawlv.com
SAMUEL R. MIRKOVICH, ESQ. (11662)
srm@cwlawlv.com
MOLLY M. HIGGINS, ESQ (15246)
mmh@cwlawlv.com
700 South Seventh Street
Las Vegas, Nevada 89101
Telephone: (702) 382-5222
Facsimile: (702) 382-0540

*Attorneys for Claimant Leslie Burns*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In Re: LAS VEGAS BOAT HARBOR, INC., a Nevada corporation, as owner of a certain 2018 Bennington Marine model 25SSRCX Half Admiral Pontoon Boat, No. 2449, HIN ETWF9242D818, for Exoneration from or limitation of liability,<br><br>Petitioner, | Case No.: 2:20-cv-01457-JAD-VCF<br><br>**CLAIMS OF LESLIE BURNS** |

Claimant Leslie Burns hereby submits her Claims and alleges as follows:

1.  Claimant Leslie Burns (hereinafter "Ms. Burns" or "Claimant") is an individual and a Nevada resident. At the time of the subject incident, Ms. Burns was 27 years old.

2.  Petitioner Las Vegas Boat Harbor, Inc. ("LVBH" or "Petitioner"), is a Nevada corporation with its principal place of business in Clark County, Nevada. LVBH rents various watercrafts on Lake Mead through the fictitious firm name "Boating Lake Mead." LVBH rented the pontoon boat and motor at issue in this case.

3.  Whenever it is alleged in these Claims that LVBH did any act or thing, it is meant that LVBH's officers, agents, servants, employees, or representatives did such act or thing and at the time such act or thing was done, it was done with the full authorization or ratification of LVBH or was done in the normal and routine course and scope of business, or with the actual, apparent and/or implied authority of LVBH or its subsidiaries' officers, agents, servants, employees, representatives,

or subsidiaries. Specifically, LVBH is liable for the actions of its officers, agents, servants, employees, and representatives.

4.  At all times material to the Claims, the acts and omissions giving rise to this action occurred in Clark County, Nevada.

5.  On or about July 2, 2019, Ms. Burns and a group of friends (the "Group") visited Lake Mead on a 2018 Bennington Marine model SX25 (hereinafter "Boat") they rented from LVBH.  The Boat was equipped with a 40 Horsepower Four Stroke Mercury Marine outboard motor (hereinafter "Motor").  The Boat was not equipped with a radio, flares, flags, or first-aid kit.

6.  LVBH rented the Boat to the Group despite the fact that none of them had ever obtained a boating education card or complete any boating safety courses. Rather than require at least one of the operators to possess a boating education card—a measure that would likely cut into LVBH's bottom line—LVBH opted to instead present a cursory safety video.  LVBH only mandated that three members of the nine-person group watch the video, which it played on a small television in the middle of its busy storefront.  LVBH's instructions to the Group regarding the Boat and Motor focused mostly on limiting damage to the propeller, how to avoid getting stranded on the lake due to inclement weather, and other issues that would diminish LVBH's profits.

7.  After the Group departed from the Lake Mead Marina and visited other beaches, they beached the Boat at Sandy Cove.  Before leaving Sandy Cove, the Group wanted to take a Group photo.  By this point, however, the wind and waves had moved the Boat so that it was parallel to the beach instead of perpendicular.  As the wind and waves continued to push the Boat parallel to the shore and close to nearby rocks, the Group was concerned that the Boat's propeller might be damaged and opted to reposition the Boat before taking the group photo.

8.  To help reposition the Boat, Ms. Burns and a few other members of the Group waded into the water and pushed the Boat away from the shore.  Ms. Burns was standing on the port side of the Boat towards the front when the driver of the Boat, Matthew Hansen (hereinafter "Driver"),

started the Motor. The Driver apparently planned to pull the Boat forward out of the cove so that he could drive it straight back into shore but did not realize members of the Group were still in the water.

9. After Driver started the Motor and engaged the throttle, Ms. Burns was sucked under the Boat and into the propeller. The propeller mangled Ms. Burns' right leg and she began bleeding profusely. As Ms. Burns' swimsuit was tangled in the propeller, her head had to be held above water while the Group attempted to cut her free. Once they removed Ms. Burns from her bathing suit that was tangled in the propeller and moved her to the beach—and without any first aid materials—they struggled to fashion a tourniquet out of a bathing suit drawstring and USB cord without success.

10. After approximately 30 minutes, an EMT and nurse that happened to be on another boat in the area came to provide assistance. The EMT and nurse were able to stabilize Ms. Burns' wounds with the application of a proper tourniquet until the National Park Service Rangers arrived 10-15 minutes later.

11. National Park Service Rangers transported Ms. Burns to Callville Bay by fireboat, where she was transferred to a medical helicopter and life-flighted to University Medical Center ("UMC") in Las Vegas—about a 10-minute flight. Ms. Burns remained conscious and alert throughout the ordeal until her arrival at UMC Trauma Center where she subsequently developed acute respiratory failure and was sedated and intubated.

12. Ms. Burns suffered multiple lacerations on her left elbow and left hip areas. Further, an examination of her mangled lower right leg revealed severe lacerations from her thigh down to her foot in addition to extensive factures involving her fibula, tibia, talus, and calcaneus bones.

13. Ms. Burns underwent a surgical procedure on July 3, 2019 during which surgeons cleaned her wounds, repaired her lacerations, and attempted to save her lower right leg. Unfortunately, these measures proved unsuccessful and, on July 4, 2019, Ms. Burns' surgeon was forced to amputate her right leg below the knee. Two days later, Ms. Burns underwent yet another surgical procedure to revise and close her stump.

14. Ms. Burns remained at UMC until July 11, 2019, when her doctors transferred her to Encompass Health Rehabilitation facility ("Encompass"). Ms. Burns spent two weeks at Encompass before she could finally return home.

15. As set forth in greater detail below, LVBH is liable for its failure to act reasonably in renting the Boat and its failure to address the unreasonable danger presented by the Boat and Motor despite being fully aware of the same. Ms. Burns' permanent and life-altering injuries would not have occurred but for LVBH's negligence in renting the Boat and its failure to employ one of numerous available alternative safety devices and/or designs that would have addressed the unnecessary danger presented by the exposed propeller, which made the Boat unmerchantable and unseaworthy.

## FIRST CAUSE OF ACTION

### (Strict Liability)

16. Paragraphs 1 through 15 are hereby specifically incorporated herein as though fully set forth.

17. LVBH and its agents and/or employees introduced into the stream of commerce in the United States of America, at Clark County, Nevada, the Boat, Motor, and unguarded propeller.

18. The Boat, Motor, and unguarded propeller that were marketed and/or distributed and/or sold by LVBH and caused Ms. Burns' injuries were unreasonable dangerous and unsafe for their intended use by reason of their defects.

19. The Boat, Motor, and unguarded propeller that caused Ms. Burns' injuries did not perform in a manner to be expected by a reasonable consumer under the circumstances.

20. The Boat, Motor, and unguarded propeller that caused Ms. Burns' injuries were expected to and did reach Ms. Burns without substantial change affecting their condition.

21. Ms. Burns and those with her on the day of the incident did not materially alter or modify the defective Boat, Motor, or unguarded propeller after renting them from LVBH.

22. At the time of the subject incident, the Boat, Motor, and unguarded propeller that caused Ms. Burns' injuries were being used in a manner that was reasonably foreseeable by Defendant.

23. The Boat and Motor as marketed, distributed, and/or sold by LVBH with an unguarded propeller and no other safety devices to prevent and/or reduce the risk of a propeller-related injury or death were unreasonably dangerous as designed.

24. LVBH and its agents and/or employees were aware of the dangerous and defective condition when LVBH introduced the Boat and Motor into the stream of commerce.

25. LVBH knew or, in the exercise of due care, should have known of the danger posed by dangerous and defective condition of the Boat and Motor. LVBH possessed special knowledge of the materials, design, character, and assemblage of the Boat and Motor.

26. Safer alternative designs that would have prevented and/or significantly reduced the risk of contact with the propeller were know, reasonably available, and economically feasible prior to, and at the time, the Boat and Motor were marketed and/or distributed and/or sold. Such safer alternative designs include, but are not limited to, a propeller guard or cage, a propeller alert system, a virtual lifeline lanyard system, and an elevated cockpit to increase the operator's visibility.

27. Ms. Burns' injuries and damages described in these Claims were a direct and proximate result of the defective Boat and Motor supplied by LVBH, for which LVBH is strictly liable, and for which Ms. Burns seeks judgment as set forth below.

28. As a direct and proximate result of the defective nature of the Boat and Motor supplied by LVBH, Ms. Burns has been damaged in an amount greater than $15,000.00.

29. Ms. Burns has been forced to retain the services of attorneys to prosecute this action and is entitled to an award of reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION

**(Negligence)**

30. Paragraphs 1 through 29 are hereby specifically incorporated herein as though fully set forth.

31. LVBH was negligent in failing to use reasonable care to eliminate foreseeable dangers that would expose users of its products to an unreasonable risk of harm. Specifically, LVBH failed to use reasonable care in protecting against the foreseeable danger posed by the use of an unguarded or unprotected propeller on the boat that it supplied to members of the public.

32. LVBH owed a duty to act with reasonable care and diligence towards foreseeable users of its products.

33. LVBH owed a duty of care to employ a reasonable safer alternative design, such as a propeller guard, a propeller alert system, a virtual lifeline lanyard system, and/or an elevated cockpit to increase the operator's visibility and failed to do so.

34. LVBH breached its duty to act with reasonable care and diligence by placing unreasonably dangerous products on the market. The Boat and Motor were unreasonably dangerous for their intended use. It was foreseeable that the Boat and Motor could cause the type of injuries Ms. Burns suffered.

35. LVBH was also negligent in the processes it employed (or failed to employ) when it rented the Boat and Motor to Ms. Burns and her Group. Specifically, LVBH owed a duty of care to adequately inform and educate Ms. Burns and her Group who rented the Boat and Motor of the unreasonable danger posed by an unguarded or unprotected propeller. LVBH also owed a duty of care to equip its Boat with safety equipment such as a radio, flares, flags, and first-aid materials. LVBH breached these duties to act with reasonable care and diligence.

36. LVBH knew, or in the exercise of due care, should have known that the Boat was unreasonably dangerous for its intended use, yet placed the Boat and Motor on the market.

37. LVBH knew, or in the exercise of due care, should have known that it failed to adequately inform and educate Ms. Burns and her Group who rented the Boat and Motor of the unreasonable danger posed by an unguarded or unprotected propeller.

38. LVBH knew, or in the exercise of due care, should have known that it negligently failed to equip its Boat with adequate safety equipment such as radio, flares, flags, and first-aid materials.

39. As a direct and proximate result of LVBH's breaches of its duty of care, Ms. Burns suffered severe and life-altering injuries and has been damages in an amount greater than $15,000.00.

40. Ms. Burns has been forced to retain the services of attorneys to prosecute this action and is entitled to an award of reasonable attorneys' fees and costs.

### THIRD CAUSE OF ACTION

### (Lack of Seaworthiness)

41. Paragraphs 1 through 40 are hereby specifically incorporated herein as though fully set forth.

42. LVBH was engaged in the distribution, introduction, transporting, delivering, advertising, selling, leasing, and recommending for use to the general public the Boat with an unguarded propeller and no other safety devices to prevent and/or reduce the risk of a propeller related injury or death, with the knowledge that said products were to be used by the general public, including Ms. Burns, and LVBH warranted and represented that the Boat was seaworthy and reasonably fit for its intended purpose.

43. Ms. Burns and her Group relied upon the representation and warranties and had no knowledge of the unsafe quality of the Boat and Motor.

44. The Boat and Motor were not fit for the purpose for which they were intended in that they were so defectively designed, produced, delivered, maintained, repaired, assembled, inspected and installed, that when used by Ms. Burns and her Group in the usual and normal manner for which

it was intended, caused severe injuries to Ms. Burns.

45. The Boat and Motor as marketed, distributed, and/or sold by LVBH with an unguarded propeller and no other safety devices to prevent and/or reduce the risk of a propeller-related injury or death were not reasonably fit or suitable for their intended use.

46. LVBH knew or, in the exercise of due care, should have known of the dangerous and defective condition of the Boat and Motor and that such condition was the actual and proximate cause of Ms. Burns' injuries.

47. As a direct and proximate result of LVBH's breaches of its warranty of seaworthiness, Ms. Burns suffered severe and life-altering injuries and has been damages in an amount greater than $15,000.00

48. Ms. Burns has been forced to retain the services of attorneys to prosecute this action and is entitled to an award of reasonable attorneys' fees and costs.

## FOURTH CAUSE OF ACTION

### (Breach of Implied Warranty of Merchantability)

49. Paragraphs 1 through 48 are hereby specifically incorporated herein as though fully set forth.

50. LVBH warranted and represented that the Boat was of merchantable quality.

51. The Boat was not of merchantable quality in that, when used in the normal manner by Ms. Burns and her Group, it caused severe and permanent injuries, including the amputation of Ms. Burns right leg below the knee.

52. LVBH owed a duty to all persons who could reasonably be foreseen to be on or upon the Boat, including Ms. Burns, to inspect and maintain the Boat in such a manner as to keep it free and safe from defective or dangerous conditions, including but not limited to an unguarded propeller.

53. LVBH and its agents and/or employees breached their duty to Ms. Burns by allowing a dangerous and defective condition to exist on the Boat and providing no other safety devices to

prevent and/or reduce the risk of a propeller-related injury or death.

54. LVBH knew or, in the exercise of due care, should have known of the dangerous and defective condition of the Boat and Motor and that such condition was the actual and proximate cause of Ms. Burns' injuries.

55. As a direct and proximate result of LVBH's breaches of its warranty of merchantability, Ms. Burns suffered severe and life-altering injuries and has been damages in an amount greater than $15,000.00

56. Ms. Burns has been forced to retain the services of attorneys to prosecute this action and is entitled to an award of reasonable attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Claimant prays for judgment against Petitioner Las Vegas Boat Harbor, Inc., dismissing its Complaint for Exoneration or Limitation of Liability with Prejudice and as follows:

1. For compensatory damages in excess of $15,000.00;

2. For attorney's fees and costs of suit incurred herein;

3. For pre-judgment and post-judgment interest, as allowed by law; and

4. For such other and further relief as is appropriate under the circumstances.

DATED this 18th day of August, 2020.

CAMPBELL & WILLIAMS

By /s/ *Samuel R. Mirkovich*
DONALD J. CAMPBELL, ESQ. (1216)
SAMUEL R. MIRKOVICH, ESQ. (11662)
MOLLY M. HIGGINS, ESQ. (15246)
700 South Seventh Street
Las Vegas, Nevada 89101

*Attorneys for Claimant Leslie Burns*

# CERTIFICATE OF MAILING

I certify that I am an employee of Campbell & Williams, and that on this 18th day of August, 2020 I caused the foregoing document entitled **CLAIMS OF LESLIE BURNS** to be served by placing said copy in an envelope with postage fully prepaid, in the U.S. Mail in Las Vegas, Nevada, with said envelope addressed to the following counsel:

Steven T. Jaffe, Esq.
Taylor R. Anderson, Esq.
HALL JAFFE & CLAYTON LLP
7425 Peak Drive
Las Vegas, Nevada 89128

*Counsel for Las Vegas Boat Harbor, Inc.*

Karie N. Wilson Esq.
ALVERSON TAYLOR
MORTENSEN & SANDERS
6605 Grand Montecito Parkway #200
Las Vegas, Nevada 89149

*Counsel for Polaris Boats, LLC*

Dawn Davis, Esq.
Patrick X. Fowler, Esq.
SNELL & WILMER LLP
3883 Howard Hughes Parkway #1100
Las Vegas, Nevada 89169

*Counsel for Mercury Marine, a Division Of Brunswick Corporation*

/s/ ***John Y. Chong***
An Employee of Campbell & Williams