CAMPBELL & WILLIAMS
DONALD J. CAMPBELL, ESQ. (1216)
djc@cwlawlv.com
SAMUEL R. MIRKOVICH, ESQ. (11662)
srm@cwlawlv.com
MOLLY M. HIGGINS, ESQ (15246)
mmh@cwlawlv.com
700 South Seventh Street
Las Vegas, Nevada 89101
Telephone: (702) 382-5222
Facsimile: (702) 382-0540

*Attorneys for Claimant Leslie Burns*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In Re: LAS VEGAS BOAT HARBOR, INC., a Nevada corporation, as owner of a certain 2018 Bennington Marine model 25SSRCX Half Admiral Pontoon Boat, No. 2449, HIN ETWF9242D818, for Exoneration from or limitation of liability, <br><br> Petitioner, | Case No.: 2:20-cv-01457-JAD-VCF <br><br> **MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO FRCP 12(b)(1)** |

## I.   INTRODUCTION

If nothing else, the fact that Las Vegas Boat Harbor, Inc. (hereinafter "LVBH" or "Plaintiff") would seek to exonerate or limit its exposure to liability based on the anachronistic Shipowners Limitation of Liability Act of 1851 (hereinafter the "Act") speaks volumes of how it views its chances of success in *Burns v. Las Vegas Boat Harbor, Inc. et al.*; Case No. A-20-817351-C.[1]   Although Claimant Leslie Burns (hereinafter "Ms. Burns" or "Claimant") disputes the Act's application to her claims, the Court need not reach that issue as LVBH's Complaint for Exoneration From or Limitation of Liability is plainly time-barred.

---

[1] *See, e.g.*, *In re Hawaiian Motorsports* 2018 WL 3065381, at *2 (D. Haw. Feb. 29, 2008) ("[m]any cases have criticized the Act as hopelessly anachronistic.") (citing numerous cases); *Lewis Charters, Inc. v. Huckins Yacht Corp.*, 871 F.2d 1046, 1054 (11th Cir. 1989) (observing there is "little reason" for the Act's limitation of liability for the "owners of pleasure vessels[.]").

To obtain protection under the Act, LVBH was required to petition this Court within six months of receiving written notice of a claim which may exceed the value of the vessel in question. 46 U.S.C. App. § 183, 185; *see also Doxsee Sea Clam Co. v. Brown*, 13 F.3d 550, 554 (2d Cir. 1994); *In re McCarthy Bros. Co./Clark Bridge*, 83 F.3d 821, 829 (7th Cir. 1996). Here, Ms. Burns notified LVBH of her claim concerning the amputation of her right leg by no later than September 17, 2019. At that point, LVBH knew the value of Ms. Burns' claim would exceed the value of its rental pontoon boat—a mere $22,035.00—and was required to seek protection under the Act by no later than March 15, 2020. Because LVBH's August 6, 2020 Complaint is time-barred, the Court should dismiss this matter for lack of subject matter jurisdiction.

Claimant will briefly describe the tragic facts of the underlying incident and notice to LVBH of Ms. Burns' claim before turning to the abundant legal authority mandating dismissal.

## II. FACTUAL BACKGROUND

On or about July 2, 2019, Ms. Burns and a group of eight friends visited Lake Mead and rented a 2018 Bennington Marine model SX25 (hereinafter "Boat") from LVBH. The Boat was equipped with a 40 Horsepower Four Stroke Mercury Marine outboard motor (hereinafter "Motor"). The Boat was not equipped with a radio, flares, flags, or first-aid kit.

LVBH rented the Boat to the group even though none of individuals had ever obtained a boating education card or completed any boating safety courses. Rather than require at least one of the operators to possess a boating education card—a measure that would likely cut into LVBH's bottom line—LVBH opted to instead present a cursory safety video. LVBH only required that three members of the nine-person group watch the video, which it played on a small television in the middle of its busy storefront. LVBH's instructions to the group regarding the Boat and Motor focused mostly on limiting damage to the propeller, how to avoid getting stranded on the lake in inclement weather, and other issues that would diminish LVBH's profits.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
700 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 ● Fax: 702.382.0540
www.campbellandwilliams.com

While visiting Sandy Cove, wind and waves began to push the Boat parallel to the shore and closer to nearby rocks. To avoid potentially damaging the propeller, the group opted to reposition the Boat. To do so, Ms. Burns and a few other members of the group waded into the water and pushed the Boat away from the shore. Ms. Burns was standing on the port side of the Boat towards the front when the driver of the Boat, Matthew Hansen (hereinafter "Driver"), started the Motor. The Driver apparently planned to pull the Boat forward out of the cove so that he could drive it straight back into shore but did not realize members of the group were still in the water.

After Driver started the Motor and engaged the throttle, Ms. Burns was sucked under the Boat and into the propeller. The propeller mangled Ms. Burns' right leg. Eventually, National Park Service transported Ms. Burns to Callville Bay, where she was transferred to a medical helicopter and life-flighted to University Medical Center ("UMC"). There, Ms. Burns underwent multiple surgeries including the amputation of her right leg below the knee.

On June 30, 2020, Ms. Burns filed negligence and products liability claims for her permanent and life-altering injuries against LVBH as well as the manufacturer of the Motor ("Mercury") and the manufacturer of the Boat ("Polaris"). *See Burns v. Las Vegas Boat Harbor, Inc. et al.*; Case No. A-20-817351-C.

### III. SUMMARY OF UNDISPUTED FACTS ("UDF")

1.      On July 2, 2020, Ms. Burns suffered severe injuries that included the amputation of her right leg as a result of a propeller strike. *See* Complaint [ECF No. 3] at ¶ 5; Exhibit "1," 7/9/2019 Letter to LVBH.

2.      On July 5, 2019 and July 8, 2019, local television news stations ran stories about Ms. Burns' incident and injuries. *See* Channel 13 KTNV Las Vegas, https://www.ktnv.com/news/teacher-loses-leg-after-boating-accident-on-lake-mead (last visited Aug. 10, 2020) and 8 News Now Las Vegas, https://www.8newsnow.com/news/local-news/local-teacher-shares-story-of-survival-after-boating-accident/ (last visited Aug. 10, 2020). These stories

1   highlighted the fact that (i) Ms. Burns' right leg was amputated; (ii) she was hospitalized for a period

2   of days; and (iii) underwent multiple surgeries. *Id*.

3       3.      On July 9, 2019, the Campbell & Williams law firm ("C&W") sent a representation

4   letter to LVBH via Certified U.S. Mail. Ex. 1. There, C&W notified LVBH that it had been "retained

5   to represent the interests of Leslie Burns for personal injuries she suffered in an exposed propeller

6   incident involving [the Boat]." *Id*. C&W further informed LVBH that Ms. Burns' injuries "include,

7   but are not limited to, the amputation of her right leg." *Id*. C&W also made two demands of LVBH.

8   First, C&W demanded that LVBH "preserve all materials that are potentially relevant to all matters

9   at issue in this claim." *Id*. Second, C&W demanded that LVBH provide it with "a certified copy of

10  the declaration page for any and all insurance agreements or policies that may be liable to satisfy,

11  indemnify or reimburse all or part of any judgment that may be entered in this action." *Id*.

12      4.      On or before July 24, 2019, LVBH retained Steven T. Jaffe, Esq. ("Mr. Jaffe") and the

13  law firm of Hall Jaffe & Clayton, LLP ("Hall Jaffe") to represent its interests regarding Ms. Burns'

14  claim. *See* Exhibit "2," 7/24/2019 Jaffe Rep. Ltr. Hall Jaffe is a local civil litigation law firm that

15  specializes in civil defense work. Hall Jaffe's website states that its "litigation practice is [its]

16  foundation and trademark," and that the firm "centers its practice on trial practice and litigation,

17  primarily defending against tort [ ] lawsuits" including "catastrophic motor vehicle accidents." *See*

18  Hall Jaffe Website, https://lawhjc.com (last visited on Aug. 10, 2020). For his part, Mr. Jaffe is a

19  trial lawyer who has spent decades defending motor vehicle and products liability lawsuits. *Id*. at

20  https://lawhjc.com/attorneys/steven-jaffe/ (last visited on Aug. 10, 2020).

21      5.      On July 24, 2019, Mr. Jaffe wrote to C&W and advised that his firm had been retained

22  to represent LVBH's interests regarding Ms. Burns' claim. Ex. 2. This correspondence featured a

23  "Re:" section that reads "Las Vegas Boat Harbor adv. Leslie Burns." *Id*. The "Re:" section further

24  lists Ms. Burns as the "Claimant" and noted her "Claim No." *Id*. Finally, the "Case #" was listed as

25  "DEMAND." *Id*.

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
700 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 ● Fax: 702.382.0540
www.campbellandwilliams.com

6.  On August 2, 2019, Hall Jaffe sent identical "Notice of Claim and Inspection" letters to Polaris and Mercury. *See* Exhibit "3," 8/2/2019 Notice of Claim Letters.  Both letters featured the same "Re:" section as Hall Jaffe's July 24, 2019 correspondence and were titled "**NOTICE OF CLAIM AND INSPECTION**." *Id*. (emphasis in original).  The opening line of the letters states that "[Hall Jaffe] represents [LVBH] with respect to a claim by Leslie Burns regarding a boating accident that occurred on July 2, 2019." *Id*.  Hall Jaffe further explained that Ms. Burns' "claim potentially involves allegations of a manufacturing or product defect with respect to [the Boat]," and provided a copy of C&W's July 9, 2019 letter "regarding the claim and preserving evidence." *Id*.

7.  On August 6, 2019, C&W sent an e-mail to Mr. Jaffe regarding the Boat inspection with the subject line "Burns v. LVBH—Inspection." *See* Exhibit "4," 8/6/2019 E-mail.

8.  On August 9, 2019, Hall Jaffe responded to an e-mail from Mercury with the subject line "Las Vegas Boat Harbor/Leslie Burns claim." *See* Exhibit "5," 8/9/2019 E-mail.

9.  On August 13, 2019, Polaris responded to Hall Jaffe's Notice of Claim and Inspection letter and demanded that LVBH preserve the Boat and any other potentially relevant evidence until Polaris "has had sufficient opportunity to defend its interests relative to your claim." *See* Exhibit "6," 8/13/2019 Polaris Letter.

10.  On August 29, 2019, Hall Jaffe sent a "Notice of Claim and Inspection" letter to three individuals who were with Ms. Burns on the day of the incident and had rented the Boat. *See* Exhibit "7," 8/29/2019 Notice of Claim Letter.  This letter featured the same "Re:" section as Hall Jaffe's earlier correspondence. *Id*.  The letter advised these individuals of "a potential claim by Leslie Burns," that the individuals "may be responsible for some or all of Ms. Burns' damages," and that they should "contact [their] attorney or insurance carrier." *Id*.

11.  On September 11, 2019, Hall Jaffe sent a letter to C&W in advance of the Boat inspection. *See* Exhibit "8," 9/11/2019 Letter re: Spoliation.  This letter featured the same "Re:" section as Hall Jaffe's earlier correspondence but for the "Case No." line, which was changed from

"DEMAND" to "Pre-Litigation." *Id*. In this letter, Hall Jaffe advised C&W that LVBH had lost the propeller that struck Ms. Burns' leg. *Id*.

12.     The inspection of the Boat occurred on September 17, 2019. Counsel from C&W attended the inspection with a boating expert and a videographer. *See* Exhibit "9," 9/17/2019 Inspection Attendees E-mail. The inspection was also attended by counsel for LVBH, Mercury, and Polaris along with their respective experts and/or company representatives. *Id*.

13.     After the inspection, C&W sent Hall Jaffe a copy of the report generated by the National Park Service regarding Ms. Burns' incident. *See* Exhibit "10," 9/17/2019 Incident Report E-mail. In addition to detailing the gruesome nature of Ms. Burns' injuries, this 17-page Incident Report noted that representatives of LVBH reported to the scene and transported the group with Ms. Burns to the marina while Ms. Burns was life-flighted to UMC Hospital. *Id*.

14.     Ms. Burns, via her counsel at C&W, submitted a settlement demand package to LVBH on May 14, 2020. *See* Mirkovich Decl., at ¶ 12.

15.     On June 30, 2020, Ms. Burns filed suit against LVBH, Mercury, and Polaris in the Eighth Judicial District Court in Clark County, Nevada. *See Burns v. Las Vegas Boat Harbor, Inc. et al.*, Case No. A-20-817351-C.

16.     On August 6, 2020, LVBH filed a Complaint for Exoneration From Liability or Limitation of Liability. *See* Complaint [ECF No. 3]. There, LVBH alleged that its filing is timely because the "claim was first made on May 14, 2020." *Id*. at ¶ 16. LVBH further alleged that the value of the Boat was between $22,205.00 and $31,235.00. *Id*. at ¶ 28.

## IV.     ARGUMENT

### A.     Legal Standard Under FRCP 12(b)(1).

A motion to dismiss for lack of subject matter jurisdiction "may attack the existence of subject matter jurisdiction in fact." *In re UFO Chutting of Hawaii, Inc.*, 233 F.Supp.2d 1254, 1256 (D. Haw. 2001) (citing *Thornhill Publ'g Co., Inc. v. General Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir.

1979)). In the face of a factual attack on subject matter jurisdiction, "no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed facts will not preclude the trial court from evaluating for itself the existence of subject matter jurisdiction in fact." *Id*. Similarly, when reviewing such a motion, the court is "not restricted to the face of the pleadings but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *In re Hawaiian Watersports, LLC*, 2008 WL 3065381, at *1 (Feb. 29, 2008) (citing *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (internal citations omitted)).

The plaintiff—*i.e.*, LVBH—has the burden of proving that jurisdiction does in fact exist. *In re UFO*, 233 F.Supp.2d. at 1256. "Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Id*. (citing *Rosenbaum v. Syntex Corp.*, 95 F.3d 922, 926 (9th Cir. 1996)).

**B.      Law Governing Notices Of Claim Under The Act.**

The Act "was an effort by Congress to provide American shipowners with benefits equal to those of their foreign competitors." *In re UFO*, 233 F.Supp.2d at 1256  (citing *Vatican Shrimp Co., Inc. v. Solis*, 820 F.2d 674, 677 (5th Cir. 1987)). "In its first encounter with the Act, the Supreme Court explained that the great object of the law was to encourage shipbuilding and to induce capitalists to invest money in this branch of industry," and further noted that "unless shipowners can be induced to invest money, the shipping interest in the United States will flag and decline." *In re Hawaiian Motorsports*, 2018 WL 3065381, at *2 (citing *Norwich & N.Y. Transp. Co. v. Wright*, 80 U.S. 104, 121 (1871) (internal citations omitted)).

Put simply, the Act allows a shipowner to limit its liability to the value of the vessel and its then pending freight by filing a petition in a federal district court within six months of receiving written notice of a claim. 46 U.S.C. App. § 183, 185. The purpose of the six-month limitation period is to "preclude undue delays and expenses." *Jung Hyun Sook v. Great Pac. Shipping Co.*, 632 F.2d 100, 103 (9th Cir. 1980).

Because the Act does not define what constitutes "written notice of a claim," courts employ the Doxsee/McCarthy Test to determine whether a claimant has provided adequate notice of a claim under § 185. *See Orion Marine Const., Inc. v. Carrell*, 918 F.3d 1323, 1330-31 (11th Cir. 2019) (adopting the Doxsee/McCarthy Test and explaining that it is "the controlling standard for determining notice under [§ 185].") (citing *Doxsee*, 13 F.3d at 554 and *In re McCarthy*, 83 F.3d at 829)). The Doxsee/McCarthy Test holds that "notice will be sufficient if it informs the vessel owner of an actual or potential claim which may exceed the value of the vessel and is subject to limitation." *Doxsee*, 13 F.3d at 554; *see also In re McCarthy*, 83 F.3d at 829.[2]

In the event it appears "reasonably possible" that the value of the claim will exceed that of the vessel, the vessel owner "will be barred from taking advantage of the right to limit [the owner's] liability unless [the owner] files his petition within the six-month period." *In re Morania Barge No. 190, Inc.*, 690 F.2d 32, 33-34 (2d Cir. 1982); *accord In re Tom-Mac, Inc.*, 76 F.3d 678, 683 (5th Cir. 1996) ("written notice of a claim sufficient to begin the interval is one which reveals a 'reasonable possibility' that the claim made is one subject to limitation."). "When doubt exists as to whether a claim will exceed the value of a vessel, the owner will not be excused from complying with the six-month time bar." *In re Hawaiian Watersports*, 2008 WL 3065381, at \*3 (citing *Van Le v. Five Fathoms, Inc.*, 792 F.Supp. 372, 374 (D. N.J. 1992). Rather, "it is the vessel owner's burden to seek clarification regarding the amount of damages sought." *Id*. (citing *Doxsee*, 13 F.3d at 554-55).

Importantly, courts employ a "broad and flexible standard of review—reading letters of notice in their entirety and considering their whole tenor—when determining if sufficient notice was given" rather than requiring "exacting specificity in notice of a claim to a vessel owner." *In re The Complaint of RLB Contracting, Inc.*, 773 F.3d 596, 605 (5th Cir. 2014) (citing *Doxsee*, 13 F.3d at 554). In that

---

[2]  Although the Ninth Circuit has yet to formally adopt the Doxsee/McCarthy Test, numerous courts in this Circuit have recognized its application. *See e.g. In re UFO*, 233 F.Supp.2d at 1257; *In re Hawaiian Watersports*, 2008 WL 3065381, at \*3; *In re Darin Alan, Inc.*, 2004 WL 3310574 (N.D. Cal. Nov. 30, 2004).

1   regard, courts consider the parties' correspondence in the aggregate. *See, e.g.*, *In re Darin Alan*, 2004

2   WL 3310574, at *6 (citing *In re Oceanic Fleet, Inc.*, 807 F.Supp. 1261, 1263 (E.D. La. 1992) ("while

3   none of the letters may have individually constituted notice, in the aggregate, there is no doubt that

4   [the shipowner] had sufficient notice."); *In re UFO*, 233 F.Supp.2d at 1258 (considering series of

5   letters in the aggregate)).

6

7   **C.      LVBH Was On Notice Of An Actual Or Potential Claim On Or Before September 17, 2019.**

8

9   "It is settled that letters sent by claimants to vessel owners may constitute written notice of a

10  claim." *Doxsee*, 13 F.3d at 554 (citing numerous cases). In examining whether such correspondence

11  adequately informs the vessel owner of an actual or pending claim, courts look to the specific

12  language used. For example, courts examine whether the letters specifically refer to "claims" and

13  how the "Re:" line of the letter is styled. *See, e.g., Doxsee*, 13 F.3d at 554 (finding a letter provided

14  sufficient notice of a claim because it "made specific reference to a 'claim' and the "Re: line of the

15  letter was styled in the manner of an actual, present controversy[.]"); *Complaint of Beesley's Point*

16  *Sea-Doo, Inc.*, 956 F.Supp. 538, 541 (D. N.J. 1997) (citing *Doxsee* and finding that a "Re: line that

17  references 'Gillespie v. Beesley's Point Sea Doo, et al.' and provides the date of the incident" was

18  "quite particular" and provides "sufficient notice of a potential lawsuit."); *Complaint of Bayview*

19  *Charter Boats, Inc.*, 692 F.Supp. 1480, 1485-86 (E.D.N.Y. 1988) (finding that a letter from an

20  attorney informing the vessel owner of representation of a swimmer in connection with his personal

21  injuries and requesting owner refer letter to insurance and/or legal representative was sufficient

22  "notice of claim" even though the letter did not contain a threat or legal proceedings.).

23

24       Here, LVBH was aware of Ms. Burns' actual or pending claim by at least September 17, 2019.

25  C&W's initial letter of representation to LVBH on July 9, 2019 (i) identified the date of the incident

26  and the boat involved; (ii) demanded that LVBH preserve all evidence related to Ms. Burns' "claim;"

27  and (iii) requested that LVBH provide it with a copy of the declaration page for any insurance policy

28

that might "satisfy, indemnify or reimburse all or part of any judgment that may be entered in this action." *See* UDF at ¶ 3. *supra*.

Thereafter—in a clear indication that it was aware of an actual or potential claim—LVBH retained Hall Jaffe to represent its interests regarding Ms. Burns' claim. *See* UDF at ¶ 1, *supra*. In so doing, Hall Jaffe authored and responded to numerous letters/e-mails with the "Re:" line "Las Vegas Boat Harbor adv. Leslie Burns" or "Burns v. LVBH." *See* UDF at ¶ 5-8, 10-11, *supra*. Hall Jaffe's correspondence also noted a "Claim No." had been assigned to Ms. Burns' claim and referred to her "Case No." as "DEMAND" and "Pre-Litigation." *Id*. Finally, Hall Jaffe sent numerous letters with the title "Notice of Claim" to other parties. *See* UDF at ¶ 6, 10, *supra*. LVBH, thus, cannot credibly argue that it was not aware of an actual or potential claim.

**D.     LVBH Knew There Was A Reasonable Possibility That The Value Of Ms. Burns' Claim Far Exceeded The Value of The Boat By At Least September 17, 2019.**

Again, it is well-settled that a "claimant's notice needn't include a specific demand for damages" and the "vessel owner bears the burden of any uncertainty and doubt as to the amount of damages." *Orion Marine*, 918 F.3d at 1337. To that end, courts have "flatly rejected" the contention that "without a dollar amount or certainty as to the extent and permanence of the plaintiff's injuries, the period for filing a limitation could not start." *In re The Complaint of RLB Contracting, Inc.*, 773 F.3d 596, 605 (5th Cir. 2014) (internal citations omitted); *see also In re Eckstein Marine Services, L.L.C.*, 672 F.3d 310, 315 (5th Cir. 2012) (finding notice to insurer that a claimant "sustained serious and debilitating injuries when he was struck by a mooring line" that caused him to "suffer serious injuries of a permanent nature" raised a "reasonable possibility that the damages sought would exceed the value of the vessel."); *Diamond v. Beutel*, 247 F.2d 604, 605 (5th Cir. 1957) (notice to insurer that stated a child lost several teeth and had a permanent scar was sufficient to start the six-month period.); *In re Tom-Mac, Inc.*, 76 F.3d at 678 (holding six-month limitations period was triggered upon notice of claimant's death); *In re Hawaiian Motorsports*, 2008 WL 3065381, at *4 (same).

LVBH has alleged that the post-accident value of its Boat was between $22,205.00-$31,235.00. *See* UDF at ¶ 16, *supra*. As such, LVBH knew or should have known that the value of Ms. Burns' claim would greatly exceed the value of the Boat as soon it first learned her right leg was amputated, which occurred when C&W sent its representation letter on July 9, 2019. *See* UDF at ¶ 3. LVBH's awareness of the significant value of Ms. Burn's claim is likewise confirmed by its immediate retention of experienced litigation counsel and subsequent correspondence to other individuals who may be responsible for contribution. *See* UDF at ¶ 3-4, 6, 10, *supra*. Simply put, any suggestion that LVBH and its counsel were unaware that Ms. Burns' claim would exceed a meager $22,035 is not credible.

## V.  **CONCLUSION**

Based on the foregoing, Claimant Leslie Burns respectfully requests that the Court dismiss this matter for lack of subject matter jurisdiction.

DATED this 18th of August, 2020.

CAMPBELL & WILLIAMS

By /s/ ***Samuel R. Mirkovich***
DONALD J. CAMPBELL, ESQ. (1216)
SAMUEL R. MIRKOVICH, ESQ. (11662)
MOLLY M. HIGGINS, ESQ. (15246)
700 South Seventh Street
Las Vegas, Nevada 89101

*Attorneys for Claimant Leslie Burns*

**CAMPBELL & WILLIAMS**
ATTORNEYS AT LAW
700 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF MAILING

I certify that I am an employee of Campbell & Williams, and that on this 18th day of August, 2020, I caused the foregoing document entitled **MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO FRCP 12(b)(1)** to be served by placing said copy in an envelope with postage fully prepaid, in the U.S. Mail in Las Vegas, Nevada, with said envelope addressed to the following counsel:

Steven T. Jaffe, Esq.
Taylor R. Anderson, Esq.
HALL JAFFE & CLAYTON LLP
7425 Peak Drive
Las Vegas, Nevada 89128

*Counsel for Las Vegas Boat Harbor, Inc.*

Karie N. Wilson Esq.
ALVERSON TAYLOR
MORTENSEN & SANDERS
6605 Grand Montecito Parkway #200
Las Vegas, Nevada 89149

*Counsel for Polaris Boats, LLC*

Dawn Davis, Esq.
Patrick X. Fowler, Esq.
SNELL & WILMER LLP
3883 Howard Hughes Parkway #1100
Las Vegas, Nevada 89169

*Counsel for Mercury Marine, a Division*
*Of Brunswick Corporation*

/s/ ***John Y. Chong***
An Employee of Campbell & Williams

Page 12 of 12