# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re: Las Vegas Boat Harbor, Inc., a Nevada corporation, as owner of a certain 2018 Bennington Marine model 25SSRCX Half Admiral Pontoon Boat, No. 2449, HIN ETWF9242D818, for exoneration from or limitation of liability | Case No.: 2:20-cv-01457-JAD-VCF<br><br>**Order Granting Motions to Dismiss Time-Barred Liability-Limitation Action**<br><br>[ECF Nos. 5, 9 & 16] |

    Admiralty actions are uncommon fare in a land-locked and arid state like Nevada. This one asks this court to determine whether boat owner Las Vegas Boat Harbor, Inc. (LVBH) can invoke the Limitation of Vessel Owner's Liability Act of 1851 to cap its exposure for damages sustained by a boater whose leg was amputated after she was injured by a rental pontoon boat's propeller. The Act limits a vessel owner's liability to the value of the boat if the owner files a federal action within six months of written notice of a claim, and LVBH contends that it timely filed this suit less than three months after receiving the claimant's settlement demand. But the claimant argues that it was a much earlier letter that triggered the six-month deadline, which expired long before LVBH filed, making this action time-barred. Because I find that the claimant's initial letter communicated the reasonable possibility that her claim against it would exceed the value of the boat, I dismiss this case.

## Background

    On July 2, 2019, 27-year-old Leslie Burns was injured by the propeller of a pontoon boat rented from LVBH. She was airlifted to the University Medical Center (UMC) trauma center, and she underwent surgery to amputate her right leg below the knee. Burns promptly retained counsel, who sent an initial evidence-preservation letter to vessel owner LVBH just a week after

the incident. The July 9, 2019, letter advised LVBH of the incident, Burns's amputation, and which boat was involved. And it demanded that LVBH preserve all evidence related to the incident and provide details about LVBH's insurance coverage[1]:

> **Our Client:** Leslie Burns
> **DOL:** July 2, 2019
> **Boat Number:** 2449
>
> Dear Ms. Gripentog:
>
> Please be advised that this office has been retained to represent the interests of Leslie Burns for personal injuries she suffered in an exposed propeller incident that occurred involving your Admiral Pontoon Boat, Number 2449 ("Subject Boat"). Ms. Burns injuries include, but are not limited to, the amputation of her right leg.
>
> Ms. Burns hereby requests that Las Vegas Boat Harbor, Inc. dba Boating Lake Mead and all its related entities ("LVBH") engage in all reasonable efforts to honor their obligation to preserve all materials that are potentially relevant to all matters at issue in this claim. *See Bass-Davis v. Davis*, 122 Nev. 442, 450, 134 P.3d 103, 108 (2006) ("a party is required to preserve documents, tangible items, and information relevant to litigation that are reasonably calculated to lead to the discovery of admissible evidence [ ] once a party is on 'notice' of a potential legal claim."). In this regard, it is imperative that LVBH preserve the Subject Boat and all of its parts, including but not limited to its outboard motor, in the same condition in which they existed at the time of the abovementioned incident.
>
> Demand is further made that all LVBH employees, vendors, agents and contractors preserve any and all electronically stored information that might pertain to the subject incident, including but not limited to social media comments, posts and/or photographs as well as any written communications including but not limited to letters, statements, e-mails and/or text messages.
>
> Finally, please provide us a certified copy of the declaration page for any and all insurance agreements or policies that may be liable to satisfy, indemnify or reimburse all or part of any judgment that may be entered in this action.
>
> Thank you in advance for your anticipated compliance with this important evidentiary matter.

LVBH's counsel set up a boat inspection, and in an August 2, 2019, letter to the boat's motor manufacturer advising of the upcoming inspection, LVBH's attorney explained,

> This office represents Las Vegas Boat Harbor with respect to a claim by Leslie Burns regarding a boating accident that occurred on July 2, 2019[,] at Lake Mead outside Las Vegas, Nevada. The claim potentially involves allegations of a manufacturing or product defect with respect to a 2018 Bennington Marine pontoon boat . . . that was involved in the accident. Enclosed is

---
[1] ECF No. 9-2 (7/9/19 evidence-preservation letter).

> correspondence from Ms. Burns' attorney Samuel Mirkovich, Esq. regarding the claim and preserving evidence.[2]

In a separate, August 29, 2019, letter to several people with Burns on the boat on the day of the incident, LVBH's counsel advised:

> [O]ur office has been retained to represent the Las Vegas Boat Harbor with respect to a potential claim by Leslie Burns regarding an accident that occurred on July 2, 2019. On that date, you were responsible for the boat as the primary renter and/or an authorized driver and therefore may be responsible for some or all of Ms. Burns' damages . . . . You should contact your attorney or insurance carrier and advise them of this potential claim.[3]

On September 17, 2019, Burns's counsel emailed to LVBH's counsel a copy of the National Park Service's incident report. That report recounts the accident from the perspective of Burns and several witnesses, the nature of Burns's injuries, the fact that Burns was airlifted to UMC after being transported to the marina by park rangers, and that she "was being treated at [UMC] in Las Vegas in the Trauma Intensive Care Unit."[4] Burns sent a comprehensive settlement-demand package to LVBH on May 14, 2020, and ultimately filed suit against LVBH and the manufacturers of the boat and its engine on June 30, 2020, in Nevada State Court.[5]

On August 6, 2020, LVBH filed this action for exoneration from, or limitation of, liability under the Limitation of Vessel Owner's Liability Act of 1851.[6] LVBH alleges that "[t]he post-accident value of the [b]oat is between $22,205.00 and $31,235.00,"[7] and it moves

---

[2] ECF No. 9-4 at 6 (8/2/19 letter).
[3] ECF No. 9-8 at 2 (8/29/19 letter).
[4] ECF No. 9-11 at 5.
[5] *Burns v. Las Vegas Boat Harbor, Inc., et al.*, Case No. A-20-817351-C.
[6] ECF No. 3.
[7] *Id.* at 4.

3

for an order enjoining Burns's state-court action and all other suits exceeding the value of the vessel.[8] Burns opposes the motion[9] and, along with boat-manufacturer Polaris Boats, Inc.,[10] asks to dismiss this action as time-barred, arguing that it was filed more than six months after LVBH was put on notice of Burns's claim. The dispute turns on which document qualifies as sufficient notice under the Act, with Burns and Polaris pointing to the July 9, 2019, evidence-preservation letter, and LVBH claiming that its six-month clock didn't start running until Burns's May 14, 2020, settlement demand.[11] Because I find that the July 9, 2019, letter satisfied the statutory notice requirement, making LVBH's August 6, 2020, liability-limitation action months late, I grant the motions to dismiss, deny LVBH's motion as moot, and close this case.

## Discussion

"A holdover from the days when encouraging commerce by sea was considered more important than providing full redress to victims of maritime accidents,"[12] the Limitation of Vessel Owner's Liability Act of 1851 allows a boat owner to limit its liability for certain injuries to "the value of the vessel and [its] pending freight."[13] To take advantage of this cap, the owner must "bring a civil action" in a federal district court "within 6 months after a claimant gives the owner written notice of a claim."[14] Just what qualifies as "written notice of a claim" is

---

[8] ECF No. 6.
[9] ECF No. 14.
[10] ECF Nos. 9 (Burns's motion to dismiss), 16 (Polaris's motion to dismiss); 18 (Polaris's joinder in Burns's motion).
[11] ECF No. 24 (LVBH's omnibus opposition).
[12] *Delta Country Ventures, Inc. v. Magana*, 986 F.2d 1260, 1266 (9th Cir. 1993) (Kozinski, J., dissenting).
[13] 46 U.S.C. § 30505(a) et seq.
[14] 46 U.S.C. § 30511(a).

undecided in the Ninth Circuit, but nationally "there exist some well-established principles."[15]  "For one, it is widely accepted that a formal complaint is not necessary to satisfy the requirement and that letters by claimants to vessel owners may constitute notice."[16]  "Exacting specificity in a notice of a claim to a vessel owner" is not required; rather, letters of notice must be read "in their entirety and considering their 'whole tenor.'"[17]  And the notice need not exist in a singular letter but "can be issued through a body of correspondence."[18]

### A.      Methods for determining notice sufficiency under the Act

Courts evaluating the sufficiency of such a notice generally apply one of two methods. The most widely accepted test was distilled from the Second and Seventh Circuit cases of *Doxsee Sea Clam Company v. Brown*[19] and *In re Complaint of McCarthy Bros. Co.*[20]  It asks whether the written notice to the vessel owner "reveal[s] 'a reasonable possibility'"[21] that the claim "'may exceed the value of the vessel and is subject to limitation.'"[22]  A secondary approach derives from two district court cases, *Rodriguez Moreira v. Lemay*[23] and *Matter of*

---

[15] *In the Matter of the Complaint of Martz*, __ F. Supp.3d __, 2020 WL 6479161, *8 (D. Alaska, Nov. 3, 2020).

[16] *Id*. & 8 n.78 (collecting authority).

[17] *Doxsee Sea Clam Co. v. Brown*, 13 F.3d 550, 554 (2d Cir. 1994) (quoting *In re Allen N. Spooner & Sons, Inc*., 253 F.2d 584, 586 (2d Cir. 1958)).

[18] *Id*. & 8 n.79 (collecting authority).

[19] *Id*.

[20] *In re Complaint of McCarthy Bros. Co.*, 83 F.3d 821 (7th Cir. 1996).

[21] *Paradise Divers Inc. v. Upmal*, 402 F.3d 1087, 1090 (11th Cir. 2005) (quoting *McCarthy*, 83 F.3d at 829.

[22] *Martz*, 2020 WL 6479161 *5 (quoting *Orion Marine Constr. , Inc. v. Carroll*, 918 F.3d 1323, 1330 (11th Cir. 2019)).

[23] *Rodriguez Moreira v. Lemay*, 659 F. Supp. 89, 91 (S.D. Fla. 1987).

*Loyd W. Richardson Construction Company*.[24]  It is a three-factor test that requires "that the claimant's notice (1) demand a right or supposed right, (2) blame the vessel owner for any damage or loss, and (3) call on the vessel owner for anything due."[25]

Though LVBH encourages me to employ the *Richardson-Moreira* factors to evaluate the sufficiency of Burns's notice, my encyclopedic review of the jurisprudence leads me to adopt the *Doxsee-McCarthy* reasonable-possibility test as the defendants urge.  The *Doxsee-McCarthy* test is recognized as the "modern maritime rule" and has been employed by the Second, Fifth, Seventh, and Eleventh Circuits.[26]  It is the approach primarily used by other district courts in the Ninth Circuit.[27]  Contrarily, and as the Eleventh Circuit observed two years ago in *Orion Marine Construction v. Carroll*, the *Richardson-Moreira* test "does not appear to have been adopted by any circuit court, and generally seems to have fallen into desuetude since *Doxsee* was decided."[28]  The reasonable-possibility approach "aligns with the purposes of the Act,"[29] which include "encouraging shipowners to act promptly while at the same time eliminating consideration of

---

[24] *Matter of Loyd W. Richardson Constr. Co.*, 850 F. Supp. 555 (S.D. Tex. 1993).

[25] *Orion*, 918 F.3d at 1330–31.

[26] *In re the Complaint and Petition of the U. S. of Am. in a Cause for Exoneration from or Limitation of Liab. with Respect to the Grounding of a 21' Speedboat in or near Bullfrog Bay on Lake Powell, Utah*, 428 F. Supp. 3d 1203, 1207 (quoting *In re the Complaint of RLB Contracting, Inc., as Owner of the Dredge Jonathan King Boyd its Engine, Tackle, Gear for Exoneration or Limitation of Liab.*, 773 F.3d 596, 602 (5th Cir. 2014)) (collecting authorities).

[27] *See, e.g.*, *In the Matter of Fish n Dive, LLC*, __ F. Supp.3d __, 2020 WL 6551212 (D. Haw. 2020); *Martz*, 2020 WL 6479161 at *9; *In re Darin Alan, Inc.*, 2004 WL 3310574 (N.D. Cal. Nov. 30, 2004).

[28] *Orion*, 918 F.3d at 1331.

[29] *Martz*, 2020 WL 6479161 at *9.

small-value cases unlikely to benefit from the Act's protection."[30]  So, like the *Orion* court, I find the *Doxsee-McCarthy* test to be the superior one, and I apply it to evaluate whether this liability-limitation action is time-barred.

**B.     The written correspondence satisfies the *Doxsee-McCarthy* test.**

The *Doxsee-McCarthy* "standard evokes two inquiries: (1) whether the writing communicates the reasonable possibility of a claim, and (2) whether it communicates the reasonable possibility of damages in excess of the vessel's value."[31]  "While this standard is not toothless, it is also not particularly stringent."[32]  "The purpose of the 'reasonable possibility' standard is to place the burden of investigating potential claims on the vessel owner."[33]

### 1.     *Burns's written correspondence notified LVBH of the reasonable possibility of a claim.*

The correspondence from Burns's counsel communicated the reasonable possibility of a claim, satisfying the first prong.  The initial, July 9, 2019, letter to LVBH from Burns's counsel

---

[30] *Orion*, 918 F.3d at 1331.  The Ninth Circuit has cautioned against interpretation of the Act in a manner too favorable to boat owners.  In *Esta Later Charters, Inc. v. Ignacio*, 875 F.2d 234, 235–36 (1989) (internal citations omitted), the panel explained:

> The Liability Act provides shipowners a generous measure of
> protection not available to any other enterprise in our society.
> Many have suggested that the Act, a relic of an earlier era,
> provides protections that are neither warranted nor consistent with
> current reality.  With the availability of incorporation, insurance[,]
> and other devices to protect shipowners against major disasters, the
> Liability Act seems oddly out of place in the modern economy; its
> application could well lead to wholly unexpected and harsh results.
> We see no plausible reason for adopting an interpretation of the
> Act that will exacerbate these consequences.

[31] *RLB Contracting*, 779 F.3d at 602 (emphasis omitted).

[32] *In re Eckstein Marine Serv. L.L.C.*, 672 F.3d 310, 317 (5th Cir. 2012).

[33] *RLB Contracting*, 779 F.3d at 602.

advised that the law office had "been retained to represent the interests of Leslie Burns for personal injuries she suffered in an exposed propeller incident that occurred involving [LVBH's] Admiral Pontoon Boat, Number 2449 ('Subject Boat')."[34] In the heading of the letter, in bold, it noted the "DOL" (date of loss) as July 2, 2019.[35] The letter requested that LVBH preserve all evidence "potentially relevant to all matters at issue **in this claim**."[36] And it asked LVBH to provide "a certified copy of the declaration page for any and all insurance agreements or policies that may be liable to satisfy, indemnify[,] or reimburse all or part of any judgment that may be entered in this action."[37]

Similar features led the United States District Court for the District of Alaska to conclude in *In the Matter of Martz* that a claimant's pre-suit written correspondence satisfied the Act and started the six-month clock running. The court found that the fact that the correspondence came from counsel lent "it some formality and import," and the indication in the letters' caption that the parties were adversarial suggested a claim.[38] The substance did too. The series of letters requested information about insurance coverage, detailed the accident and damages, and advised the Martzes that an investigation was ongoing.[39] The court opined that "[a] letter from an attorney that informs a vessel owner of the attorney's representation of a person who was injured while operating that owner's vessel and advises the owner to contact its insurance company is sufficient to put the owner on notice of a potential claim," and that "repeated inquiries . . . into

---

[34] ECF No. 9-2 at 2.
[35] *Id.*
[36] *Id.* (emphasis added).
[37] *Id.* at 3.
[38] *Martz*, 2020 WL 6479161 at *10.
[39] *Id.* at *10–11.

the vessel owners' insurance coverage is equivalent to telling the owners to contact their insurance company." So "the broader context of Claimant's correspondence further supported the Court's conclusion."[40] Like in *Martz*, Burns's counsel's letters asking LVBH to preserve evidence about a date-specific accident involving its well-identified boat and to provide details about its insurance coverage for Burns's personal-injury "claim" and "any judgment that may be entered in this action" was the functional equivalent "to telling the owners to contact their insurance company" and notified LVBH that a lawsuit was a reasonable possibility.

LVBH argues that the letter falls short of the notice requirement because it does not "specifically threaten[] legal action against LVBH related to the incident . . . ."[41] But LVBH reads the notice requirement too narrowly and ignores the letter's common-sense inferences. "Magic words" are not required, and the notice must only raise a reasonable possibility of a claim against the vessel owner.[42] So, for example, an evidence-preservation demand letter in *In the Matter of Fish N Dive LLC* was found to be sufficient even though it "did not assign blame, fault, or liability" for the accident.[43] The letter stated that counsel had been "retained to investigate the death" of the deceased; "referred to all of the items described as 'evidence'" and noted that destroying them would be "considered spoliation of evidence"; and asked for "waivers and consent documents," which, the court noted, "clearly refer[red] to liability waivers."[44] "Even in the light most favorable to the Limitation Plaintiffs," the court held, "when the

---

[40] *Id*. at *11.

[41] ECF No. 24 at 15.

[42] *RLB Contracting*, 773 F.3d at 603, 605.

[43] *Fish N Dive*, 2020 WL 6551212 at *8. *See also In re Allen N. Spooner & Sons, Inc.*, 253 F.2d 584, 586 (2d Cir. 1958) (noting that phrases like "we shall look to you for reimbursement," or "some similar phrase, is, in our opinion, of no significance whatever.").

[44] *Id*.

9

Preservation of Evidence Letter is read in its entirety and its 'whole tenor' is considered, the letter provided the Limitation Plaintiffs notice that there was a potential claim arising from [the] death."[45]

The whole tenor of Burns's evidence-preservation letter—with its details about Burns's personal injuries; demand for insurance information; and use of the terms "claim," "judgment," and "action"[46]—gave LVBH ample notice that there was a reasonable possibility of a claim exceeding the value of the pontoon boat. Indeed, we need look no further than LVBH's counsel's own letters in the summer of 2019 to confirm this. LVBH's counsel responded to the evidence-preservation letter with correspondence that reflects it was well aware of the adversarial relationship between LVBH and Burns, identifying Burns as the "Claimant" with a "Claim No." and captioning the dispute "*Las Vegas Boat Harbor adv. Leslie Burns*"[47]:

```
Re:   Las Vegas Boat Harbor adv. Leslie Burns
      Insured    : Las Vegas Boat Harbor
      Claimant   : Leslie Burns
      Claim No.  : 01904485
      Case #     : DEMAND
      DOL        : 07/29/19
```

Days later, LVBH counsel sent a "Notice of Claim and Inspection" to the boat and motor manufacturers with the same caption.[48] That letter advised, "This office represents Las Vegas Boat Harbor with respect to a claim by Leslie Burns regarding a boating accident that occurred

---

[45] *Id*.

[46] *See In the Matter of Beesley's Point Sea-Doo, Inc.*, 956 F. Supp. 538, 544 (D. N.J. 1997) (noting that "'claims for personal injuries and property damages' [is] a term commonly used to describe the subject of a legal action").

[47] ECF No. 9-3 at 2 (7/24/2019 letter).

[48] ECF No. 9-4 at 2.

on July 2, 2019[,] at Lake Mead outside Las Vegas, Nevada. The claim potentially involves allegations of a manufacturing or product defect with respect to a Mercury Marine outboard motor on a 2018 Bennington Marine pontoon boat . . . that was involved in the accident."[49] LVBH was sufficiently aware of the nature and extent of Burns's claim to send a notice to the renters and authorized drivers of the pontoon boat at the time of the accident to notify them on August 29, 2019—eleven months before this liability-limitation action was filed—that they "may be responsible for some or all of Ms. Burns' damages" and "should contact [their] attorney or insurance carrier and advise them of this potential claim."[50]

As the court in *In the Matter of Martin W. Stair* noted, when the vessel owner's attorney "acknowledge[s] that there [i]s a potential claim," that "alone should suggest that the [owner] received written notice of the claim."[51] The court highlighted the owner's attorney's letter, which "provided a brief description of the injuries suffered by the claimant."[52] "Based on the content and the number of correspondences between the claimant's attorney and the [vessel owner's] insurance company," the *Stair* court held, "it is clear that the [owner] had sufficient written notice of the claim to trigger the six-month filing period for exoneration or limitation of liability."[53] And it is similarly clear here that Burns's attorney's evidence-preservation letter triggered LVBH's six-month filing period under the Act.[54]

---

[49] *Id*.

[50] ECF No. 9-8 at 2. *See also Beesley's Point Sea-Doo*, 956 F. Supp. at 542 (noting that counsel's reference to "claims" is "a clear indicia of the possibility of commencement of legal proceedings").

[51] *In the Matter of Martin W. Stair*, 2008 WL 114918, *4 (W.D. Wash., Jan. 9, 2008).

[52] *Id*.

[53] *Id*.

[54] LVBH asserts that, on December 11, 2019, it "specifically requested that counsel for Ms. Burns provide some theory of liability against the Las Vegas Boat Harbor," but "that requested

11

> ### 2. *The correspondence communicated the reasonable possibility of damages in excess of the pontoon boat's value.*

The evidence-preservation letter also notified LVBH of the reasonable possibility that Burns's claim would exceed the value of the pontoon boat, which LVBH puts at between $22,205 and $31,235. Although this early correspondence provided no estimate of Burns's damages, courts have recognized that "a demand need not express a specific quantum of damages so long as there is a reasonable possibility that a claim's value will exceed the value of the vessel."[55] Thus, in *In re Eckstein Marine Service*, the United States Court of Appeals for the Fifth Circuit rejected the vessel owner's assertion that it was unaware of the reasonable possibility that a claimant's damages might exceed the $750,000 value of its boat because the complaint "never indicated a dollar amount sought" and was "filed before the full extent and permanence of [the claimant's] injuries were definitively known."[56] The *Eckstein* court upheld the district court's dismissal of the vessel owner's liability-limitation action as untimely because,

---

clarification or explanation" didn't come until the May 14, 2020, demand letter. ECF No. 24 at 12. It notes that courts have tolled the six-month period when a vessel owner seeks clarification about the Act's application from the claimant and awaits an answer. *Id*. at 11. But the cases that LVBH cites are materially distinguishable because the notices in those cases identified a type of claim not covered by the Act. In *Petition of Hutchinson*, 28 F. Supp. 519, 520 (E.D.N.Y. 1938), the court found that the six-month period was not triggered when the hospital sent the injured claimants' bills to the vessel owner based on its understanding that the vessel owner contractually promised to pay the bills. The court found that the notice was merely of a contractual claim, and the Act "does not limit liability for such personal act or contract." *Id*. And in *Petition of American M.A.R.C., Inc.*, 224 F. Supp. 573, 576 (S.D. Cal. 1963), the court followed *Hutchinson* to hold that receipt of a copy of an application to the California Industrial Accident Commission under the Workmen's Compensation Laws did not trigger the owner's obligations under the Act, "for petitioner knows that no limitation of that claim can be had in any case." Regardless, because LVBH had enough information to put it on notice sufficient to trigger the Act's protections and six-month period well before December 11, 2019, its request at that time for further information was ineffective to toll the deadline.

[55] *RLB Contracting*, 773 F.3d at 603.

[56] *In re Eckstein Marine Service*, 672 F.3d 310, 317 (5th Cir. 2012).

by stating that the injuries the claimant sustained "were permanent and catastrophic" and would require "past and future" disability, disfigurement, medical, and hospital expenses, and by "not limit[ing] the damages sought to a specific amount," the "complaint established a reasonable possibility that his claim might exceed $750,000, the value" of the vessel.[57]

When LVBH was informed on July 9, 2019, that Burns's "injuries include, but are not limited to, the amputation of her right leg,"[58] it should have known of the reasonable possibility that her claim value would exceed that of the $22,205–31,235 pontoon boat. Such an injury is undeniably catastrophic and permanent and undoubtedly resulted in significant medical bills that alone would have easily exceeded the high-end value of the boat. But if LVBH had any question at that time whether the value of Burns's claim exceeded the boat value, such doubts should have evaporated once LVBH's counsel received the National Park Service's incident report on September 17, 2019, which noted that Burns was transported to UMC by "Mercy Air" and was in the "Trauma Intensive Care Unit,"[59] contained accounts of witnesses stating that "blood [wa]s everywhere," tourniquets were being used,[60] and they "could see arteries in her . . . leg."[61] So, at the latest, LVBH had notice by September 17, 2019, of the reasonable possibility that Burns's claim would be worth more than $22,205–31,235, and its six-month period started to run.

---

[57] *Id*. at 317–19.

[58] ECF No. 9-2 at 2.

[59] ECF No. 9-11 at 5, 9.

[60] *Id*. at 5.

[61] *Id*. at 12.

**Conclusion**

Because LVBH filed this limitation-of-liability action more than six months after it received Burns's written notice of her claim, this action must be dismissed as time barred. IT IS THEREFORE ORDERED that:

- The motions to dismiss **[ECF Nos. 9 & 16] are GRANTED**, and this action is dismissed with prejudice as untimely;

- Las Vegas Boat Harbor's Application for (A) Issuance of Order Directing Notice of Limitation and (b) Enjoining Suits **[ECF No. 5] is DENIED**;

- The Clerk of Court is directed to ENTER JUDGMENT in favor of the defendants and CLOSE THIS CASE.

_____
U.S. District Judge Jennifer A. Dorsey
Dated: March 17, 2021